EDWARDS *v.* MUDGE.

1. LIFE ESTATE—DEEDS—CONSTRUCTION—LOST INSTRUMENTS—EVIDENCE.

In a suit to determine the interest of the various parties in certain real estate, wherein complainant claimed that a certain lost instrument granted only a life interest to the grantee, a son of the grantor, defendant contending that the instrument conveyed a life estate to the son with remainder over to· the grandson, evidence reviewed and *held*, to sustain the contention of the defendant that a life interest with remainder over was conveyed by the lost deed.

2. SAME—WILLS—INTERPRETATION—INTENT.

In construing a will the entire instrument should be considered to ascertain what was the intent of the testator.

3. SAME.

Where the view presented by complainant's contention was contrary to the settled principle for construing wills, that the testator will not be presumed to have intended that any portion of his property should be left undisposed of by his will, and where the evidence of the testator's acts and the estates granted by his will tended to show that he wanted his property to be divided in the manner claimed by defendant, the decree of the trial court granting relief to the complainant is reversed, and an estate in remainder in the property, *held*, to have vested in the testator's grandson.

Appeal from Barry; North, J., presiding. Submitted November 6, 1914. (Docket No. 146.) Decided June 7, 1915.

Bill by Gertrude Mudge Edwards against Royal Mudge, Jr., and others, for partition and other equitable relief. From a decree for complainant, defendant Royal Mudge, Jr., appeals. Reversed.

*Frank A. Dean*, for appellant Royal Mudge, Jr.

*Colgrove & Potter*, for appellee.

McAlvay, J. The bill of complaint in this cause was filed by complainant against these defendants for the purpose of determining their respective rights in and to certain real estate in the city of Hastings, in Barry county. The questions involved are principally questions of fact, which for the most part are not in dispute. The history of the property involved in this litigation, as far as it is connected with any of the members of the family now seeking to determine their interests therein, is as follows:

In September, 1890, Dorr L. Mudge, now deceased, purchased of one Valentine Lyons on a contract the property in question, agreeing to pay therefor the sum of $1,680. At this time he was engaged in the clothing business with his father in Hastings, and so continued until the year 1894, when the young man retired. In January, 1894, he owed $300 on this contract. During the preceding year Dorr L. Mudge had some disagreement with his father, Royal Mudge, Sr., growing out of their business relations, and on January 3, 1894, being in arrears in his payments on this contract, his father paid the balance due thereon and took a deed of the premises from Lyons and wife to himself. The dispute in this case arises out of the disposition at once made of this property.

It is claimed on the part of the defendant Royal Mudge, Jr., son of Dorr L. Mudge, that on the same date his grandfather, Royal Mudge, Sr., conveyed the title to said premises by a good and sufficient instrument in writing then executed and delivered, giving to Dorr L. Mudge a life lease thereof, with remainder over to his son, Royal Mudge, Jr. It is admitted by complainant that Royal Mudge, Sr., executed and delivered at that time to his son, Dorr L. Mudge, a life lease.

It may be stated here that the principal question, and practically the only material one in dispute in this case, is whether this was a life lease to Dorr L. Mudge, or a life lease to him, with remainder over to Royal Mudge, Jr., his son. Dorr L. Mudge had married June 30, 1887. His son, Royal Mudge, Jr., was born December 19, 1888.

After the purchase of these premises under contract by Dorr L. Mudge, he moved into the house and resided there with his family, including Mrs. Ingram, his wife's mother, for about four years. In 1895 Dorr L. Mudge and his wife separated, and were divorced in 1896. During all the time after the purchase of these premises, with the exception of about two years, when he and his wife were separated, this family, or all of it except Dorr L. Mudge, occupied these premises, until November, 1901, when the wife of Dorr L. Mudge married Mr. Sylvester and went to Charlotte, after which it was occupied by Mrs. Ingram and Royal Mudge, Jr., until 1902, when the boy went to Charlotte to live with his mother, Mrs. Sylvester.

In 1902, several years before the dispute involved in this suit arose, negotiations were pending between Dorr L. Mudge and one of the present solicitors for complainant relative to the purchase of his interest in these premises, but no sale was made. On December 13, 1904, Dorr L. Mudge quitclaimed his interest in this property to Alonzo E. Kenaston, who at once went into the possession and control thereof and collected rents until the death of Dorr L. Mudge, which occurred October 28, 1907, when Mr. Kenaston surrendered such possession to Royal Mudge, Jr., giving him the keys of the premises, and he has had control and possession of the property continuously since that time.

The instrument in question was never recorded. It was given by Royal Mudge, Sr., to his son, Dorr L. Mudge, and was in the possession of and kept for

him by Mrs. Ingram, his wife's mother, from 1894 to 1902. She then delivered it to Dorr L. Mudge upon his request. It was in his possession after that, and in September, 1902, was seen, read, and examined by one of the solicitors for complainant with a view to purchasing his interest. He still had it on December 13, 1904, the time he quitclaimed his interest in these premises to Mr. Kenaston and delivered it to him. The record shows that it was last in his possession, and that he made diligent search for it and could not find it. He died May 9, 1910. The bill of complaint in this cause was filed on or about January 26, 1911.

This court must determine the character of this lost instrument. For this purpose we will first examine this record to ascertain what the grantor, Royal Mudge, Sr., during his lifetime, has said it was, or how he considered and treated it in making final disposition of his estate, as appears from his last will and testament, executed only a few months after the lost instrument. We find that Royal Mudge, Sr., died November 18, 1894, leaving four children, who were the complainant, Mrs. Edwards, Dorr L. Mudge, and two younger daughters. He was a man of considerable property, and left a last will and testament, dated September 17, 1894. His will was probated December 21, 1894, and Daniel Stryker, the executor named therein, was appointed executor. Soon after his appointment Mr. Stryker died, and Alonzo E. Kenaston was appointed administrator *de bonis non*. It will be necessary only to copy one paragraph of this will, and to refer generally to its other provisions. The first provision therein, disposing of any of his property, reads as follows:

"Item. Having heretofore given to my son, Dorr L. Mudge, a life lease of the house and premises of which he is now possessed and situate in the city of Hastings aforesaid, and being desirous that each of my four children should have an equal share of my

property, to make the shares of each of my other three children equal with that already given to my son Dorr L., I therefore give, grant, devise and bequeath to my youngest daughter, Lena Mudge, the homestead upon which I now reside, situate on the southeast corner of Green and East streets and being lot number three and the west half of lot number two in block number eight, in the city of Hastings aforesaid, with all the appurtenances, including the house and all the furnishings therein, to have and to hold the same for and during her natural life, the reversion and remainder I give, devise and bequeath to the heirs of her body, to have and to hold forever."

The devises of real estate to the two remaining daughters, Maud Mudge and Gertrude Mudge (the complainant), each contain the same language as to the estate devised, as follows:

"To have and to hold the same for and during her natural life, the remainder and reversion to the heirs of her body, to have and to hold the same forever."

The testator made further provision for these two daughters, Maud and Gertrude, for a building upon the premises devised to each, as they reached the age of 21 years, a dwelling house to cost at least $1,700 complete, and to each the additional sum of $1,000 for furnishing said dwelling. He made provision for the sale of the stock of goods in the store building and for renting the store, and for the disposition of such other real estate of which he might die seised. He also made a final disposition that after debts were fully paid and his estate settled, and after each of the three daughters had reached the age of 21 years, as follows:

"So long as there shall remain anything of said estate my executor shall pay to my children, Dorr L. Mudge, Gertrude Mudge, Maud Mudge and Lena Mudge, each, the sum of three hundred dollars annually and such fractional part of said sum as shall remain for the final or last payment."

In this closing paragraph of his will he emphasizes the nature of the estates in lands devised, by saying:

"It is especially understood that the devises herein to each of my said daughters herein are intended to devise and bequeath to each of them an estate in said lands * * * for and during their lives respectively, and that after the termination of said life estates the remainder shall revert to their respective next of kin and heirs at law, to have and to hold to them and their heirs forever."

A careful examination of this will discloses without question the expressed desire and intention of this testator that each of his four children should share equally in his property, and clearly states that he has already given to his son, Dorr L. Mudge, his share, described by him as "a life lease of the house and premises of which he is now possessed and situate in the city of Hastings aforesaid." And later in his will he carries out this intent to equally divide his estate among his children by the equal division among them of the rest and residue thereof not already specifically given, devised, and bequeathed. In this division his son, Dorr L. Mudge, partakes share and share alike with his three sisters.

It will be further noted that the devises of property made by the testator in this will in each instance create only a life estate in each of the three children there mentioned, with remainder over to the heirs of the body of each of them. The expressed intention by the testator, which is unambiguous and too clear to be questioned, to divide his estate equally, would fail of execution if the lost instrument made no disposition of the remainder over after the expiration of the life estate created in his son, Dorr, as is contended by the complainant.

It is a fundamental rule of the construction of wills that the intent of the testator must be found from the entire instrument. Applying this rule, no other con-

clusion can be drawn than that he intended to equally divide his estate; that he had in mind a perfect plan and intention relative to the division of his estate among those entitled to his bounty, which was formed and present at the time he gave to his son, Dorr, his share, and was completely carried out at the time he executed his will.

If the contention of complainant that this instrument created but a life estate in the son, Dorr L. Mudge, is accepted, we find that it is contrary to another well-settled rule for the construction of wills, namely, that it will be presumed that the testator did not intend to die intestate as to any of his property, for the reason that such construction would leave Royal Mudge, Sr., intestate as to a one-fourth interest in the property in dispute. This rule will not be violated, unless the presumption is rebutted by the provisions of the will, or evidence to the contrary. In the instant case neither of these conditions is present.

The only witness in the case who has given testimony as to statements made by Royal Mudge, Sr., relative to the character of the lost instrument, is Mrs. Ingram, the mother of the first wife of Dorr L. Mudge. It appears from her testimony, and it is undisputed, that this instrument was handed to her by Dorr L. Mudge at or about the time he received it from his father, and that it was kept by her in her possession for eight years thereafter. She knew its contents, and heard it read and discussed several times in the family. She is not a party to this litigation, and is in no way interested in the matter, or disqualified from testifying as to the statements made by Royal Mudge, Sr., or Dorr L. Mudge.

Very soon after this instrument was executed by Royal Mudge, Sr., she had a conversation with him relative to it, in which he said to her that he had provided a home for his son for his lifetime, and that if he had given him the right to squander it he would

not have had a cent at the end of the year; that as it was fixed there was something left to protect his wife and child. She testified positively that the lost instrument gave a life lease of the premises to Dorr L. Mudge, and that upon his death the property was to go to Royal Mudge, Jr., his son. She also testified that, when his father gave this instrument to Dorr L. Mudge, he came to the house with it and was very angry because he had only a life lease in the property, and then it was to go to his son; that he said, "I have got the deed, but I will burn it up." He said that his father asked him to have it recorded, and told her never to let it go on record, "to show the people of Hastings that I am not capable of running my own business, that I have got to have a life lease and to know that my—that I can't take care of my son and have it go to him."

The witness, in describing this instrument, said she remembered that across the top of it on the back it read, "Royal Mudge to D. L. Mudge," and also that she remembered the name of James Sweezy was on the instrument. Mr. Sweezy was a member of the bar of that county in good standing, and is one of the witnesses to the will of Royal Mudge, Sr.; the other witness being a woman. A natural inference is that Mr. Sweezy drew both the will and the lost instrument. He died before this suit was brought.

Mr. Kenaston, who acquired the interest of Dorr L. Mudge in these premises December 13, 1904, is the same person who has been appointed administrator *de bonis non* of the estate of Royal Mudge, Sr., and was so acting at the time. After the death of Dorr L. Mudge, Mr. Kenaston at once surrendered his possession and delivered the keys of the property to Royal Mudge, Jr., who, claiming ownership of the title thereof, has since that time had exclusive control and possession. Mr. Kenaston, during the years after he received the quitclaim deed from Dorr L.

Mudge, and while he was administrator *de bonis non* of the estate of Royal Mudge, deceased, never made any claim on behalf of said estate that these premises belonged to and were a part thereof, although he continued to administer said estate until it was finally settled and closed by him on July 23, 1909. He died on May 9; 1910.

This suit was instituted by complainant, who is the only member of the Mudge family interested in her contention that this lost instrument conveyed only a life lease to Dorr L. Mudge; the two sisters, Maud and Lena Mudge, having quitclaimed any interest they might have to Royal Mudge, Jr., for the nominal sum of $1 in December, 1907, a few weeks after the death of Dorr L. Mudge.

Defendant A. A. Anderson is administrator of the estate of Alonzo E. Kenaston, deceased. Defendant Eva Kenaston is his widow and the mother of his minor son, Leland Kenaston, of whom she is guardian. These persons are made parties defendant to this cause upon the theory of complainant that Alonzo E. Kenaston acquired a one-fourth interest in' these premises by virtue of the quitclaim deed to him from. Dorr L. Mudge.

All of the defendants filed answers, upon which issues were joined; but Royal Mudge, Jr., is the only one who made any contest. The cause was heard before the court, and resulted in a decree in favor of the complainant. From this decree, defendant Royal Mudge, Jr., has appealed to this court.

Considerable of the testimony in the case was objected to on various grounds—for example, the testimony given by Judge Clement Smith, of Hastings, and four or five other men of character and standing, who testified relative to conversations had with Mr. Kenaston in regard to the nature of this lost instrument, and which testimony was objected to as incompetent, as was also testimony of other witnesses re-

lating to other matters. Such testimony has not been considered.

We have carefully considered all of the evidence in the case which is not subject to objection, and we find, from the will of Royal Mudge, Sr., from his statements made relative to this lost instrument, and the statements of Dorr L. Mudge, together with other testimony, abundant evidence which convinces us that the lost instrument conveyed to Dorr L. Mudge a life lease, with remainder over to his son, Royal Mudge, Jr. While it is true that this instrument was not recorded, there is undisputed testimony accounting for the same, at least, up to the time he made his conveyance by quitclaim to Mr. Kenaston.

The record shows that Royal Mudge, Sr., felt that his son spent too much money and too much time in hunting and fishing; that he was an idler, and that at or about this time he dissolved their business relations. It shows that, when he gave his son, Dorr L. Mudge, this instrument, it made the son angry. His language indicates that he felt humiliated, and for that reason, although his father had told him to have it recorded, he instructed his mother-in-law not to let it go on record. It is undisputed that she kept it from that time for eight years, until he came for it, when he was having negotiations with different parties relative to selling his interest. It is undisputed that he kept this instrument until he sold his interest.

Mr. Kenaston has indicated, by his conduct in surrendering these premises as soon as Dorr L. Mudge died, how he regarded this instrument. He was a real estate attorney and could construe it. The fact that he did not record it is strong evidence in favor of the conclusion at which we have arrived—that it was a life lease, with a remainder over. Under no other theory can the fact that he did not record it be accounted for. As owner of the life estate in possession, he had no other interest in the fee to protect

against subsequent purchasers. This conclusion is the only one which harmonizes the material evidence in the case; which carries out the undoubted intention of the grantor in the matter of the equal distribution of his estate to his family, and leaves the investigator of these facts satisfied that such conclusion is the only one consistent with the great weight of the evidence.

The decree of the circuit court is therefore reversed, and a decree will be entered in this court, in accordance with this opinion, in favor of the defendant Royal Mudge, Jr., and against complainant, dismissing her bill of complaint, with costs of both courts in favor of said defendant.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.